880 So.2d 602 (2004)
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, et al., Appellants,
v.
F.L., the Mother, Appellee.
No. SC03-1602.
Supreme Court of Florida.
July 8, 2004.
*604 Charles J. Crist, Jr., Attorney General, John J. Rimes, III, Senior Assistant Attorney General, Christopher M. Kise, Solicitor General, Lynn C. Hearn, Deputy Solicitor General, Tallahassee, FL; Dennis W. Moore, Guardian ad Litem Program, Kissimmee, FL, for Appellant.
Felicia Shaman, Fort Lauderdale, FL; Ryan Truskoski, Orlando, FL; and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, FL, for Appellee.
PER CURIAM.
Section 39.806(1)(i), Florida Statutes (2001), authorizes the filing of a petition for termination of parental rights "when the parental rights of the parent to a sibling have been terminated involuntarily." In F.L. v. Department of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003), the Fourth District Court of Appeal declared this statutory section unconstitutional. For the reason discussed herein, we determine that section 39.806(1)(i) is constitutional and reverse the decision of the Fourth District.[1]

FACTS
The trial court entered an order terminating the parental rights of F.L., the mother, to her seventh child, C.N., Jr.[2] On appeal, the Fourth District Court of Appeal reversed the trial court's order of termination. The Department of Children and Families (DCF), joined by the child's guardian ad litem, appeals the Fourth District's decision.
F.L., the mother, has a long history with DCF. F.L. grew up in an abusive home. By the time she was in her late teens, F.L. had three children and was in an abusive relationship with C.N., Sr., an admitted drug dealer. In 1997, DCF filed a petition for dependency as to F.L.'s three children, alleging that F.L. was intoxicated while caring for the children, that the children were dirty, that F.L. had a history of domestic violence with the father, and that the home had no electricity or hot water and had an inoperable toilet. The three children were adjudicated dependent, and the court approved a reunification case plan. The plan consisted of assessments, participation in a parenting course, completion of a substance abuse course, completion of a domestic violence program, and maintaining stable housing and income.
In early 1998, while this dependency action was pending, F.L. prematurely gave birth to a fourth child. DCF immediately *605 took custody of this child and filed a petition for dependency based on the child's low birth weight and F.L.'s lack of prenatal care, and based on the allegations made in the petition for dependency of F.L.'s other children. The trial court declared F.L.'s fourth child dependent and provided a case plan for reunification similar to F.L.'s previous plan. In October 1998, the trial court found that F.L. had completed none of the required tasks on her two case plans. The court ordered DCF to file a petition to terminate F.L.'s parental rights. DCF filed the petition in December 1998. In December 1999, F.L. signed voluntary surrenders of her parental rights to her first four children. The court entered a final judgment terminating her rights in January 2000.
During those proceedings, F.L. gave birth to a fifth child at the end of 1998. In February 1999, this child was sheltered by the trial court sua sponte. The child was adjudicated dependent, and the court gave F.L. a third reunification plan with the same conditions she had been given for reunification with her other four children. F.L.'s sixth child was born in March 2000. DCF took this child into custody based on F.L.'s medical neglect. The child weighed only three pounds at birth. F.L. failed to obtain necessary medical treatment or Medicaid services for this child. In June 2000, DCF filed a petition to terminate F.L.'s parental rights to her fifth and sixth children. In August 2000, F.L. signed a voluntary surrender of parental rights to her fifth child. At the same time, DCF gave F.L. a case plan for her sixth child.
In December 2000, the court entered a final order terminating F.L.'s rights to her sixth child. The order was based on the court's finding under section 39.806(1)(c) Florida Statutes (2000), that F.L. failed to substantially comply with her case plans and that her continued involvement in the parent-child relationship would threaten the child's welfare.
C.N., Jr., the child involved in this case, was born on January 3, 2002. Just before C.N., Jr.'s birth, in November 2001, the father C.N., Sr. was incarcerated for possession of cocaine; he was released on August 25, 2002. In early 2002, an investigator from the Broward County Sheriff's Office visited F.L.'s home several times. The investigator said that F.L. was providing C.N., Jr. with appropriate care and saw no danger to C.N., Jr. Also during this time, an Early Services Intervention counselor assigned by DCF met with F.L. and said that F.L. had bonded with C.N., Jr. and was providing adequate care. Nonetheless, in April 2002, the Broward County Sheriff's Office learned that F.L.'s rights to her sixth child had been terminated involuntarily. For this reason, the Sheriff's Office filed a petition to remove C.N., Jr. from F.L.'s care. On April 24, 2002, the trial court denied the petition, finding that C.N., Jr. was receiving adequate care.
In mid-May 2002, DCF assigned a new case worker to the case. The case worker first met with F.L. on May 16. Five days later, DCF removed C.N., Jr. from F.L. and filed a request for an emergency hearing. In June 2002, DCF filed a petition to terminate F.L.'s parental rights to C.N., Jr. This petition alleged two separate and distinct grounds for termination: (1) a substantial risk of imminent harm to C.N., Jr. based on F.L.'s history of domestic violence, neglect of her children, and failure to comply with her case plans, justifying termination under section 39.806(1)(c);[3] *606 and (2) the prior involuntary termination of F.L.'s rights to her sixth child, a justification for termination under section 39.806(1)(i).[4]
In October 2002, the trial court terminated F.L.'s parental rights. The court found that DCF had given F.L. referrals for parenting counseling, substance abuse evaluation, and domestic violence counseling, but that F.L. had not substantially complied with any of these plans. Specifically, the court found clear and convincing evidence that F.L. had failed to complete a domestic violence program despite four referrals. The court found that F.L. was most recently involved in a domestic violence incident with C.N., Sr. on September 5, 2002, shortly after his release from jail on August 25, but that F.L. failed to file for a restraining order as the responding officer recommended. The court also found that F.L. underwent a substance abuse evaluation by Dr. Kathleen Rhodes, at F.L.'s attorney's referral, but that F.L. failed to give Dr. Rhodes accurate information about her substance abuse history. F.L. also refused to provide a court-ordered hair follicle for testing. In addition, despite a case plan which required completion of a thirty-six-week parenting program, the only parenting program F.L. ever completed was a twelve-week in-home program. Finally, the court found that F.L. missed some scheduled supervised visits with C.N., Jr., never paid child support, and did not have a stable residence or employment for six months after C.N., Jr.'s birth.
In the trial court's conclusions of law, the court said that the grounds for termination had been met as set forth in both sections 39.806(1)(c) and 39.806(1)(i). The court found that F.L. "made a minimal effort prior to the hearing to avoid termination of her parental rights, but even then she missed appointments, stopped going to sessions, failed to reschedule and follow through." The court also found that F.L. "failed to come forward with evidence that the circumstances or pattern of conduct that led to the involuntary termination of her parental rights to the other child cannot serve as a predictor of her conduct with this child." Ultimately, the court concluded that F.L. "demonstrated a continued unwillingness and inability ... to parent her child." Based on the risk to C.N., Jr.'s safety and health, the court concluded that it was in the manifest best interest of the child to terminate F.L.'s parental rights.
The Fourth District reversed, holding that DCF had failed to prove the requirements to terminate F.L.'s parental rights under either section 39.806(1)(c) or section 39.806(1)(i). F.L. v. Dep't of Children & Families, 849 So.2d 1114, 1120 (Fla. 4th DCA 2003). Further, the Fourth District declared section 39.806(1)(i) facially unconstitutional, reasoning that the statute impermissibly shifts the burden to the parent to show that her past conduct does not predict that the current child is at risk. 849 So.2d at 1123.
As the appellants, DCF and the guardian ad litem argue that section 39.806(1)(i) *607 is constitutional both facially and as applied in this case. Further, they argue that substantial competent evidence supports the termination of F.L.'s parental rights under either section 39.806(1)(c) or section 39.806(1)(i).

CONSTITUTIONALITY OF SECTION 39.806(1)(i)
Section 39.806(1)(i), Florida Statutes (2002), provides:
(1) The department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes they are true may petition for the termination of parental rights under any of the following circumstances:
....
(i) When the parental rights of the parent to a sibling have been terminated involuntarily.

Standard of Review
We review de novo a district court decision declaring a statute unconstitutional. State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). When a statute impinges on a fundamental liberty interest, we analyze the statute's constitutionality under a strict scrutiny standard. Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla. 1996). Parents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children. See, e.g., Beagle, 678 So.2d at 1275; Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991); see also Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that parents have a constitutionally protected liberty interest in the "care, custody and management" of their children). Because section 39.806(1)(i) impinges on fundamental parental rights, the strict scrutiny standard applies. To survive a constitutional challenge under this test, the statute must serve a compelling state interest through the least intrusive means possible. Beagle, 678 So.2d at 1276.
Whenever possible, however, a statute should be construed so as not to conflict with the constitution. Firestone v. News-Press Pub. Co., 538 So.2d 457, 459 (Fla.1989). To uphold a statute in the face of a constitutional challenge, a court may place a saving construction on the statute when this does not effectively rewrite the statute. See, e.g., id. At 460 (giving Florida's polling place statute a narrowing construction); State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994) (giving Florida's hate crimes statute a narrowing construction).

Constitutional Requirements in the Termination of Parental Rights
Section 39.806(1)(i) authorizes the termination of parental rights when the parental rights of the parent to a sibling have been terminated involuntarily.[5] We have previously addressed a similar statutory provision and have established the constitutional requirements for a termination of rights based on the parent's conduct toward a different child. See Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565 (Fla.1991). In Padgett, a mother appealed the termination of her rights to her fifth child. Her rights to her previous four children had been terminated based on serious abuse and neglect. Id. at 566-68. The trial court terminated the mother's rights to her fifth child based on a finding of "a substantial likelihood of future abuse *608 and neglect of the child." Id. at 568. The mother argued that the termination of her rights could not be based on prospective abuse. Id.
In Padgett, we rejected the mother's argument. We recognized that parents have a fundamental liberty interest in the care and upbringing of their children. Id. at 570. Nonetheless, Padgett emphasized that parental rights may be superseded by the State's compelling duty to protect children. Id. (stating that "the [parental] right is not absolute but is subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail") (quoting In re Camm, 294 So.2d 318, 320 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974)).
To protect the rights of both parent and child, Padgett held that to terminate parental rights, "the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Id. at 571. We said that this ordinarily means that the state must show that the parent abused, neglected, or abandoned the child; however, a termination of rights to one child under circumstances of abuse or neglect can serve as grounds to terminate the parent's rights to another child. Id. Nonetheless, Padgett held that in either case, the state must establish that the termination of rights "is the least restrictive means of protecting the child from serious harm." Id. Implicit in our decision in Padgett is the recognition that in some cases, but not in all cases, a parent's conduct toward another child may demonstrate a substantial risk of significant harm to the current child. In all cases, we emphasized that to pass constitutional muster, the termination of parental rights to the current child must be the least restrictive means of protecting that child from harm. Id. at 571. This determination can be made only after a judicious assessment of all relevant circumstances. As we explained in In re M.F., 770 So.2d 1189 (Fla.2000), our decision in Padgett was not based on any single fact; instead, it was based "on extensive and wide-ranging evidence of abuse and neglect." 770 So.2d at 1193. Thus, Padgett requires that a termination decision be based on the totality of the circumstances. See also M.F., 770 So.2d at 1194 (holding that a trial court may not base a final ruling of dependency solely on the fact that the parent committed a sex act on a different child, but must focus on all of the circumstances surrounding the current petition).

Applications of Padgett to Section 39.806(1)(i)
While we have not previously considered the application of Padgett to section 39.806(1)(i), several district courts have struggled to interpret the statute in light of Padgett's constitutional requirements. In A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002), a mother challenged the constitutionality of section 39.806(1)(i). The Fifth District upheld the statute, stating that:
[A] parent whose rights have been involuntarily terminated as to one child may avoid termination as to another child if he or she comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue.
Id. at 686. A.B.'s interpretation, that the statute creates a presumption sufficient for termination but subject to rebuttal by a parent, has been endorsed in other appellate cases. See, e.g., T.P. v. Dep't of Children & Families, 860 So.2d 1084 (Fla. 5th DCA 2003); In re T.S., 855 So.2d 679 (Fla. 2d DCA 2003).
*609 However, the constitutionality of such a rebuttable presumption in this context has been disputed. In C.W. v. Department of Children & Families, 814 So.2d 488 (Fla. 1st DCA 2002), Judge Ervin wrote separately to express the view that section 39.806(1)(i) should not be used to terminate parental rights based solely on the parent's conduct with previous children. Id. at 495. Judge Ervin argued that to comport with Padgett, the state must also prove that the behavior of the parent is likely to continue, thereby placing the unharmed child at risk. Id. at 498.
The Fourth District in the present case agreed with Judge Ervin and disapproved the rebuttable presumption created by A.B. See F.L., 849 So.2d at 1123. F.L. stated that the rebuttable presumption of A.B. impermissibly shifts to the parent the burden to show a lack of substantial risk of harm to the current child. 849 So.2d at 1123. This relieves the state of the burden of proof, violating Padgett's requirement that to pass constitutional muster, the state must be required to prove that reunification with the current child would pose substantial risk to the child. F.L., 849 So.2d at 1123 (citing Padgett, 577 So.2d at 571).

Constitutional Construction of Section 39.806(1)(i)
We agree with the Fourth District that section 39.806(1)(i) may not constitutionally permit a termination of parental rights without proof of substantial risk to the child. The rebuttable presumption stated in A.B. would relieve the state of this burden of proof. This burden shifting would violate the constitutional requirements articulated in Padgett. We therefore disapprove the use of such a rebuttable presumption. However, we have an obligation to construe section 39.806(1)(i) in a way that preserves its constitutionality. See Doe v. Mortham, 708 So.2d 929, 934 n. 12 (Fla.1998).
F.L. argues on appeal that under a constitutional interpretation, section 39.806(1)(i) merely gets DCF through the courthouse door, i.e., the statute allows DCF to file a petition for termination of parental rights without the prerequisite case plan, based on a prior involuntary termination. But to be constitutional under Padgett, the statute must be interpreted as requiring DCF to also prove that reunification would be a substantial risk to the child and that termination is the least restrictive way to protect the child.
We agree with this interpretation. In enacting section 39.806(1)(i), the Legislature did not abrogate the constitutional requirements of Padgett. The Legislature is presumed to know the judicial constructions of a law when amending that law, and the Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed. See City of Hollywood v. Lombardi, 770 So.2d 1196, 1202 (Fla.2000). In 1998, the Legislature added subsection (i) to the grounds enumerated in section 39.806(1) for terminating parental rights. See ch. 98-403, § 88, at 3205, Laws of Fla. Nothing expressed or implied in subsection (i) suggests that the Legislature intended to abolish the constitutional mandate of Padgett. Padgett, therefore, represents a binding judicial construction of the statute governing the termination of parental rights. Padgett's requirements remain unchanged by the 1998 amendment adding subsection (i) to section 39.806(1).
We, therefore, hold that parental rights may be terminated under section 39.806(1)(i) only if the state proves both a prior involuntary termination of rights to a sibling and a substantial risk of significant harm to the current child. Further, the state must prove that the termination of *610 parental rights is the least restrictive means of protecting the child from harm. For a trial court applying section 39.806(1)(i), the circumstances leading to the prior involuntary termination will be highly relevant to the court's determination of whether the current child is at risk and whether termination is the least restrictive way to protect the child. Specifically, if the parent's conduct that led to the involuntary termination involved egregious abuse or neglect of another child, this will tend to indicate a greater risk of harm to the current child. The amount of time that has passed since the prior involuntary termination will also be relevant. A very recent involuntary termination will tend to indicate a greater current risk. Finally, evidence of any change in circumstances since the prior involuntary termination will obviously be significant to a determination of risk to a current child. While a parent's past conduct necessarily has some predictive value as to that parent's likely future conduct, positive life changes can overcome a negative history.
We must emphasize that a parent is not required to show evidence of changed circumstances to avoid a termination of rights under section 39.806(1)(i). The trial court may consider evidence introduced by any party when considering whether a current child is at substantial risk of significant harm and whether termination of rights is the least restrictive means of protecting the child from harm. However, to support a termination order under section 39.806(1)(i), DCF must prove by clear and convincing evidence that the parent's rights to a prior child were terminated involuntarily, that the current child is at substantial risk of significant harm, and that termination of rights is the least restrictive means of protecting the child from harm. Interpreted in this light, section 39.806(1)(i) is constitutional.

Application to this Case
Having clarified the proof required for a termination of parental rights under section 39.806(1)(i), we now address the trial court's order of termination in this case. The trial court concluded that clear and convincing evidence supports the termination of F.L.'s parental rights under section 39.806(1)(i). As we have explained above, to establish grounds for termination under section 39.806(1)(i), DCF must prove both a prior involuntary termination and a substantial risk of significant harm to the current child. Further, DCF must prove that termination of rights is the least restrictive means of protecting the child from harm. In this case, the trial court applied the test from A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002), which requires a parent whose prior rights were terminated to rebut a presumption in favor of the termination of rights to a current child. The order indicates that the trial court placed the burden on F.L., stating that F.L. "failed to come forward with evidence that [her prior] conduct ... cannot serve as a predictor of her conduct with this child." We have disapproved the A.B. rebuttable presumption because the burden must remain on DCF to prove the elements required for a termination of parental rights. We, therefore, reverse the decision of the district court and remand the case for the trial court to apply the constitutional interpretation of section 39.806(1)(i) to the facts.[6]

CONCLUSION
We hold that parental rights may be terminated under section 39.806(1)(i) only *611 if the state proves both a prior involuntary termination of rights to a sibling and a substantial risk of significant harm to the current child. Further, the state must prove that the termination of parental rights is the least restrictive means of protecting the current child from harm. The circumstances surrounding a prior involuntary termination are highly relevant to a court's determination of whether a current child is at risk and whether termination is the least restrictive way to protect the child. However, our decision in Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla. 1991), requires that a termination decision be based not on any single act or omission with respect to a previous child, but rather on the totality of circumstances surrounding the current petition.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS, QUINCE, and BELL, JJ., concur.
PARIENTE, C.J., concurs with an opinion, in which ANSTEAD, J., concurs.
CANTERO, J., concurs specially with an opinion, in which WELLS, J., concurs.
WELLS, J., concurs in part and dissents in part with an opinion.
PARIENTE, C.J., concurring.
I concur in the majority opinion in which the Court finds this statutory provision constitutional only with the dual provisos that the burden of proof may not be shifted to the parent and that there must be proof of substantial risk of significant harm to the current child. Further, as the majority explains, the State must prove that the termination of parental rights is the least restrictive means of protecting the child from harm. Because the trial court's order does not comply with any of these requirements and because DCF did not offer F.L. a case plan with a goal of reunification, I would remand to the trial court for further proceedings as the Fourth District opinion directs.
In brief response to Justice Cantero's specially concurring opinion, I agree that section 39.810 contains a detailed description of the factors that the trial court must consider in determining whether termination is in the manifest best interests of the child. However, a manifest best interests determination is not the equivalent of requiring the State to prove substantial risk of significant harm to the child under one of the statutory grounds for termination contained in section 39.806.
In response to Justice Wells' concurring in part and dissenting in part opinion that would affirm the trial court's order, I agree that the trial court's order is indeed detailed. However, as the Fourth District observed, the trial court's order clearly shifted the burden to the mother to show that her conduct that caused the termination of her parental rights to previous children would not serve as a predictor of her conduct with the present child. See F.L. v. Dep't of Children & Families, 849 So.2d 1114, 1122 (Fla. 4th DCA 2003). As Judge Warner's detailed opinion further explains regarding the evidence in this case,
DCF failed to prove that regardless of the provision of services, F.L.'s continued involvement as a parent to C.N., Jr. would threaten his well-being. The original allegations against F.L. consisted of her being intoxicated around her children sometime in 1997 and medical neglect of a congenital condition. F.L. was also accused of medical neglect of Y.L., F.N., and Cl.N. As to C.N., Jr., not only was there no allegation of medical neglect, but the undisputed evidence showed that F.L. had provided all appropriate *612 medical care to C.N., Jr. Before DCF became involved, F.L. had taken the baby to the pediatrician, made sure he was properly immunized, and even noticed diaper rash on him when he was not in her custody. She also had adequate food, formula, and clothing for the baby. These were actions that F.L. never took with her other children. Therefore, DCF did not prove that C.N., Jr., would be medically neglected irrespective of the provision of services. As to the intoxication, there was no evidence presented that the mother abused illegal substances or alcohol. The only evidence DCF presented was the single incident where she was intoxicated around her other children. This was insufficient to show that her continuing involvement with C.N., Jr., would create harm to him. While she failed to attend programs on substance abuse required under the prior case plans, after an evaluation by a substance abuse therapist, the therapist concluded that she was not an abuser and that treatment was unnecessary. Although DCF suggested the therapist did not have all the correct information, there was still no evidence that F.L. abused substances or that she would be harmful to her child as a result. At the very least, no evidence supported the finding she would be a continued danger to her child irrespective of the provision of services.

Despite DCF's refusal to offer her a case plan, the mother actively sought services to improve herself, something she had never done with the prior children. She attended several programs, and her counselors and therapists all believed that she was making a sincere and able effort to learn to parent correctly. Although the trial court considered this "too little too late," in the past she had never even started any programs or services. This time she did them on her own without assistance from DCF. Because there was evidence that F.L. had in fact improved her parenting skills with the provision of services, DCF failed to prove by clear and convincing evidence that any efforts would be futile to terminate F.L.'s rights pursuant to section 39.806(1)(c).
The court also found that DCF proved the termination of F.L.'s rights under section 39.806(1)(i), which ... allows for termination when the parent's rights to another child have been involuntarily terminated. Because her rights to Cl.N. were involuntarily terminated, the court shifted the burden to the mother to show her conduct that caused the termination of her parental rights as to Cl.N. would not serve as a predictor of her conduct with C.N., Jr. Finding that she had not satisfied that burden, the court terminated her rights.
Id. at 1121-22. Therefore, the Fourth District's decision to remand this case to the trial court for further proceedings is entirely appropriate. DCF's current policy, which is consistent with the case law and the statute, is to promote family preservation if reunification can be accomplished without substantial risk of harm to the child. See Curtis Krueger, DCF Policy Shift Aims to Keep Families Together, St. Petersburg Times, February 7, 2003, available at http://www. sptimes.com/2003/02/07/State/DCF_policy_shift_aims. shtml (last visited June 23, 2004).
Despite the sad history that led to the termination of F.L.'s parental rights to her previous children, there is every indication that F.L. now realizes that she must do whatever is necessary so as not to lose this child. I hope that part of that effort is the recognition that substance abuse may very well have led to her past neglect of her older children. Finally, although ending *613 the uncertainties of litigation and stabilizing the child's life are always laudable goals, see concurring in part and dissenting in part opinion at 29, these goals alone are not sufficient reasons to uphold an order of termination that is based on an unconstitutional shifting of the burden of proof to the parent. This Court and the Fourth District have done everything possible to expedite these appeals so that this case can be expeditiously returned to the trial court for further proceedings. But if there is a chance that the parent and child could be reunited without harm to the child, that is clearly the preferable alternative.
ANSTEAD, J., concurs.
CANTERO, J., specially concurring.
I agree with the majority that section 39.806(l)(i), Florida Statutes, is constitutional, but I believe that section 39.810 greatly affects the constitutional analysis. I would adopt Judge Sawaya's specially concurring opinion in T.P. v. Department of Children & Families, 860 So.2d 1084, 1090-95 (Fla. 5th DCA 2003), which recognizes the interplay between sections 39.806 and 39.810 and concludes that the statute does not shift the burden of proof and does not create a rebuttable presumption.
Chapter 39 establishes a two-part process for terminating parental rights. First, it allows interested parties, including the Department of Children and Families (DCF), to petition the court to terminate a parent's rights in the child when specified circumstances exist. These include when the parent has voluntarily surrendered or abandoned the child, when the parent is incarcerated (and other conditions are met), and when a parent has failed to comply with a case plan. § 39.806(1)(a)-(i), Fla. Stat. (2002). One of these circumstances is "[w]hen the parental rights of the parent to a sibling have been terminated involuntarily." § 39.806(l)(i), Fla. Stat. (2002). None of these circumstances, however, in itself authorizes the termination of a parent's rights. Rather, as the majority notes, section 39.806(l)(i)as with any other subsection"merely gets DCF through the courthouse door." Majority op. at 609. This is where section 39.810 comes in.
As Judge Sawaya explains, 860 So.2d at 1092, after this Court's decision in Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 570 (Fla.1991), and in recognition of the overriding importance of protecting the welfare of children, the Florida Legislature in 1994 enacted section 39.4612, Florida Statutes, renumbered in 1998 as section 39.810. This statute is entitled "Manifest best interests of the child" and provides in pertinent part that "[i]n a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child" (emphasis added). The grounds for termination must be established by clear and convincing evidence. § 39.809(1), Fla. Stat. (2002); § 39.811(2), Fla. Stat. (2002).
Therefore, in every termination case whether based on the termination of rights in a sibling or another groundit is the burden of the petitioner, usually DCF, to establish by clear and convincing evidence that termination of parental rights is in the manifest best interests of the child. See L.O. v. Florida Dep't of Children & Fam. Servs., 807 So.2d 810 (Fla. 4th DCA 2002); In re K.M., 788 So.2d 306 (Fla. 2d DCA 2001); In re K.C.C., 750 So.2d 38 (Fla. 2d DCA 1999); C.C. v. Dep't of Children & Fam. Servs., 812 So.2d 520 (Fla. 1st DCA 2002). As one court has explained, "[w]e are obliged to affirm the termination of parental rights if [DCF] has met its burden to present clear and convincing evidence of a statutory ground for terminating parental rights, along with clear and *614 convincing evidence that terminating parental rights is in the best interests of the child." N.L. v. Dep't of Children & Fam. Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003).[7]
Section 39.810 specifically requires that the trial court, in determining whether termination is in the manifest best interests of the child, consider and evaluate all relevant factors, which "shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child" (emphasis added). That section then goes on to list eleven nonexclusive factors that the court must consider. These are:
(1) Any suitable permanent custody arrangement with a relative of the child.
(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.

(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home.

(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child.

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties.

(6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child.
(7) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties.
(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

(9) The depth of the relationship existing between the child and the present custodian.

(10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(11) The recommendations for the child provided by the child's guardian ad litem or legal representative.
*615 § 39.810, Fla. Stat. (2002) (emphasis added).[8] Thus, with the enactment of section 39.810, the State may no longer terminate the parental rights in one child solely because that parental rights in another have been terminated. DCF (or some other party) must still prove by clear and convincing evidence that termination of parental rights is in this child's best interests. The statute creates no presumption, and, as the majority notes, we should impose none.
In Padgett, we held that to terminate the parental rights in one child based solely on the prior termination of rights in another child, "the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." 577 So.2d at 571. The state must also establish that termination of parental rights "is the least restrictive means of protecting the child from serious harm." Id. We decided Padgett before section 39.810 was enacted. Padgett essentially filled in a constitutional gap in the statute. Section 39.810 now provides the filler. It contains a host of factors the court must consider, along with all other relevant ones that would depend on the circumstances. I believe these factors grant the protection Padgett requires. Moreover, it is more encompassing than Padgett and accounts for the wide range of circumstances that may exist in termination cases. For example, if the child is currently residing with the parent, the "reunification" standard of Padgett would not even apply because the parent and child have never been separated. Padgett's "substantial risk of significant harm to the child" standard is subsumed in subsection (3) of section 39.810 (addressing "[t]he capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home"), as well as subsection (4) (addressing "[t]he present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child"). To the extent it is not subsumed within those subsections, it is a catch-all factor.
As to Padgett's "least restrictive means" standard, subsection (1) requires a court to consider "[a]ny suitable permanent custody arrangement with a relative of the child"a less restrictive means than termination. Judge Sawaya has noted that a finding that termination is in the child's manifest best interests necessarily implies that no less restrictive alternatives exist. Therefore, section 39.810 renders the less restrictive means test unnecessary. See T.P., 860 So.2d at 1094-95 (Sawaya, C.J., specially concurring).
Section 39.806 specifies the circumstances under which one may petition for the termination of parental rights. Under section 39.810, however, the burden remains on the petitioner to prove by clear and convincing evidence that the best interests of the child require it. Therefore, I would hold that on that basis the statute does not create a rebuttable presumption and does not shift the burden. Section 39.806(1)(i) is constitutional.
WELLS, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur in reversing the district court's decision and in finding the statute to be constitutional. I concur with Justice Cantero's specially concurring opinion.
*616 I dissent from remanding this case to the trial judge. From a reading of the trial judge's detailed fifteen-page order, I find that he, in sum, applied the law correctly and that his factual determinations are supported by competent, substantial evidence. I would affirm the trial court's order and end the uncertainties of litigation for this child. Stabilizing this child's life is clearly in the child's best interest.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] The trial court also terminated the parental rights of the father, C.N., Sr., who did not appeal. We commend the trial court's diligence in conducting an extensive evidentiary hearing and providing a thorough and well-analyzed order.
[3] Section 39.806(1)(c) authorizes the filing of a petition for the termination of parental rights

[w]hen the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
§ 39.806(1)(c), Fla. Stat. (2002).
[4] Section 39.806(1)(i) authorizes the filing of a petition for the termination of parental rights "[w]hen the parental rights of the parent to a sibling have been terminated involuntarily." § 39.806(1)(i), Fla. Stat. (2002).
[5] To terminate parental rights, DCF must also prove by clear and convincing evidence that termination is in the manifest best interest of the child. See §§ 39.802(4)(c), 39.809(1), 39.810, Fla. Stat. (2002).
[6] We note that the statutory determination of the manifest best interest of the child is unchanged by our opinion here. See §§ 39.802(4)(c), 39.809(1), 39.810, Fla. Stat. (2002).
[7] We have defined "clear and convincing evidence" as

an "intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." In re Davey, 645 So.2d 398, 404 (Fla. 1994). The trial judge is responsible for finding facts and for resolving any conflicts in the evidence. Florida Bar v. Hooper, 509 So.2d 289, 290-91 (Fla.1987). As we said in Davey, the evidence must be sufficient to convince the trier of fact without hesitancy. 645 So.2d at 404.
In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995), cert. denied, 516 U.S. 1051, 116 S.Ct. 719, 133 L.Ed.2d 672 (1996).
[8] The emphasized factors are relevant considerations in this case.