896 So.2d 911 (2005)
W.R., the Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 4D04-1174.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
Rehearing Denied April 15, 2005.
*912 William T. Hess of Hess & Heathcock, Stuart, for appellant.
Crystal Y. Yates-Hammond, Fort Pierce, for appellee.
HAZOURI, J.
The issue in the instant case is whether the Department of Children and Family Services (Department) presented clear and convincing evidence to support the trial court's decision to terminate W.R.'s parental rights as to S.R. We determine that it did not and thus, reverse and remand this *913 case for proceedings consistent with this opinion.
Three days after S.R. was born, in December 2001, the Department filed a shelter petition and S.R. was sheltered on that same day. The Department later sought to terminate W.R.'s parental rights based upon sections 39.806(1)(c) and 39.806(1)(i), Florida Statutes,[1] without offering W.R. a case plan.
A hearing on the Department's petition was held in August 2002. For reasons which are unclear from the record, approximately a year and a half passed before the trial court's order terminating W.R.'s parental rights as to S.R. was entered in February 2004. The trial court's order included the following findings to support its decision to terminate W.R.'s parental rights: 1) the mother was offered a case plan in a prior case concerning two older children neither of whom is the subject of the instant proceeding, 2) the mother's parental rights were involuntarily terminated as to her two older children prior to the birth of S.R. and W.R. failed to work on the case plan given to her as to the two older children, 3) the mother acknowledged that she has been arrested at least twenty times and was only out of jail a few weeks prior to the birth of S.R., 4) the mother admits that new charges resulted in her arrest shortly after S.R. was born, 5) the mother is incarcerated for a period of four years, 6) the four-year prison term is a result of the mother committing new criminal offenses immediately before and after the birth of S.R., 7) one of the more egregious offenses for which the mother is currently in prison is strong arm robbery, 8) the mother is not able to remain arrest free, and 9) there is no evidence that the mother has addressed the mental health and substance abuse issues raised in her prior case.
W.R. asserts that a number of the trial court's findings are not supported by substantial competent evidence. We agree. First, W.R. was sentenced to a two-year prison term, not four years as the trial court found. Next, the trial court found that there was no evidence W.R. addressed her mental health and substance abuse issues. However, the record reveals that during her incarceration, W.R. was receiving mental health and substance abuse treatment. Moreover, W.R. was also attending parenting and life skills programs. Last, the trial court found that W.R. committed strong arm robbery. There is no evidence in the record to support this finding. W.R. was convicted of robbery without a weapon and there was no evidence that she used violence during the robbery.
The Department is required to present clear and convincing evidence of the statutory bases upon which it filed its petition. See N.L. v. Dep't of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003). Section 39.806 details the bases upon which one can petition to have a parent's rights terminated. In the instant case, the Department's petition was based upon sections 39.806(1)(c) and 39.806(1)(i). Thus, the Department was required to present clear and convincing evidence that W.R. engaged in conduct towards S.R. which demonstrated her continued involvement threatened S.R., regardless of the provision of services, or that W.R. had her parental rights terminated as to a sibling of S.R.
The issue in the instant case is not whether the Department sufficiently *914 showed the existence of either of these grounds. Demonstrating the existence of one of these grounds merely gets the Department in the door, but does not satisfy the Department's burden when it seeks to terminate a parent's rights. See Fla. Dep't of Children & Families v. F.L., 880 So.2d 602, 609-10 (Fla.2004) (discussing how section 39.806(1)(i) "merely gets DCF through the courthouse door"). The Florida Supreme Court has concluded that in termination proceedings, the Department must "show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child" and "establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm" before a parent's rights can be terminated. Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991).
Clear and convincing proof is an intermediate standard which requires the evidence be credible, clear, and lacking in confusion such that the trier of fact is convinced of the matter's truthfulness without hesitancy. See In re Davey, 645 So.2d 398, 404 (Fla.1994). It is with this standard and burden in mind that we analyze whether there was clear and convincing evidence to support the trial court's decision.
The Department's petition and ultimately the trial court's decision rest on W.R.'s history, particularly a prior termination of parental rights as to two older children, T.C. and J.C., and a lengthy criminal record. In a recent case addressed by this court where a mother had a background similar to that of W.R., this court reversed the termination of parental rights finding that the Department had not satisfied its burden. See C.B. v. Dep't of Children & Families, 874 So.2d 1246 (Fla. 4th DCA 2004).
In C.B., the mother's rights to her second child were terminated without the opportunity to complete a case plan. Id. at 1248. The mother in C.B. and W.R. share the following factual similarities: (1) both were previously offered a case plan as to other children, (2) they failed such case plans and had their parental rights terminated as a result, and (3) each led a criminal lifestyle resulting in periods of incarceration. See id. at 1251. In C.B., the trial court found that the mother was not amenable to services. Id. The trial court in the instant case made the same finding as to W.R. This means that the trial court found that to provide W.R. with services would be unsuccessful or S.R. would have been exposed to harm even if W.R. was provided services. In C.B., this court noted that the trial court did not specify why the mother was not amenable to services. Id. at 1252. The court noted that "[t]he record [was] devoid of any evidence that the mother would not be amenable to services." Id. In closing, this court stated that the mother "had been released from prison, she ha[d] made some effort to be a parent and under the law is entitled to a reasonable opportunity to satisfy a case plan." Id. at 1254.
Similarly, in the instant case, the record does not state why the trial court thought W.R. would not be amenable to services. W.R. testified that as part of her current two-year sentence she requested drug and mental health treatment. In addition, she testified that she was taking classes in prison that were teaching her to be a better parent and stay out of jail. W.R. was taking these steps in spite of the fact that the Department never offered her an opportunity to be reunited with S.R. The Department never offered W.R. services which she refused. W.R. also testified that if she was given a case plan, she would do whatever she had to do to satisfy the case plan. There is not substantial *915 competent evidence in the record to rebut that W.R. was open to services and even ready to take advantage of such services. We conclude that based on the reasoning in C.B., the Department did not establish that terminating W.R.'s parental rights was the least restrictive means of protecting S.R.
This conclusion is also in line with the supreme court's rationale in F.L. As the court noted in F.L., a parent's conduct towards older children may demonstrate a risk of harm to a current child, but the constitution still requires that the state demonstrate that termination as to the current child is the least restrictive means of protecting the child based on a totality of circumstances. F.L., 880 So.2d at 608. "While a parent's past conduct necessarily has some predicative value as to that parent's likely future conduct, positive life changes can overcome a negative history." Id. at 610.
In determining how relevant a parent's prior involuntary termination is to a current child, the trial court can consider the parent's conduct as to the older children, how much time has passed since the prior involuntary termination, and any change in circumstances. See id. W.R.'s parental rights were terminated as to her two older children in 2000, over three years before the trial court made the decision in the instant case. The trial court's order as to W.R.'s two older children refers to allegations of threatened violence towards an HRS worker and a relative and allegations of instability made in 1996, approximately five years before S.R. was born. While W.R.'s conduct towards T.C. and J.C., over three years prior to the trial court's decision as to S.R., may exhibit a risk of harm to S.R., it does not satisfy the Department's burden. There is no evidence in the record that W.R. was ever violent towards S.R., unlike the mother in K.M.B. v. Department of Children & Families (In re D.W.), 793 So.2d 39 (Fla. 2d DCA 2001).
In K.M.B., the second district, addressing a petition which terminated the mother's rights as to three children, reversed the termination order. Id. at 39. The court found that termination was premature where the record included multiple instances of physical abuse as to the two older children from one incident and no such abuse towards the youngest child who was sheltered immediately after birth. Id. at 40-41.
Similarly, in the instant case, we acknowledge that W.R.'s history as to her two older children is negative. However, the only behavior towards S.R. that the trial court based its decision on was W.R.'s arrest after the birth of S.R. and subsequent two-year prison term. This is by no means to say that every parent against whom a petition is filed is entitled to a case plan. However, given this mother's history at the time the trial court made its decision and her lack of opportunity to demonstrate her ability to parent S.R., the Department did not prove by clear and convincing evidence that the only way to protect S.R. was by permanently terminating W.R.'s parental rights.
A termination determination cannot be based on a single act or omission but rather requires an analysis of the totality of the circumstances. See F.L., 880 So.2d at 608 (discussing Padgett, 577 So.2d 565). The Department does not rely solely on W.R.'s prior involuntary termination, but couples this fact with W.R.'s instability where she has been arrested, by her own estimation, twenty times and was serving a two-year prison sentence at the time of the hearing on the Department's petition. This length of time does not constitute a majority of S.R.'s minority. W.R.'s history, while disheartening, is an insufficient basis upon which to permanently deprive an individual of a fundamental liberty interest. *916 The fact that W.R. was arrested numerous times before the birth of S.R. provides some insight into W.R.'s possible behavior in the future. However, in light of the facts that S.R. was sheltered within days of her birth and W.R. was given no case plan to complete, it is difficult to conceive what steps W.R. could have taken to overcome her negative history. While W.R. did participate in criminal behavior after the birth of S.R., W.R. also has taken advantage of services provided to her in prison to help her be a better parent without being requested to do so by the Department. Based on the totality of these circumstances, we find that the Department's burden in the instant case was not satisfied.
W.R. also raises the issue of burden shifting in the instant appeal. There is no dispute that the burden lies with the Department. See F.L., 880 So.2d at 610. W.R.'s argument is based upon the language used in the trial court's order which states "the mother has demonstrated no ability to provide" and "the mother has not demonstrated the capacity to care." The Department argues the language may be inartfully worded, but the record does not indicate that the trial court required W.R. to come forward and prove her ability to care or provide for S.R. We agree.
We hold in the instant case that under the record presented to this court, the Department did not present clear and convincing evidence that terminating W.R.'s parental rights was the least restrictive way of protecting S.R. Our instructions in this case mirror those offered by the second district in L.N. v. Department of Children & Family Servs. (In re E.D.), 884 So.2d 291 (Fla. 2d DCA 2004), which states
[o]n remand, the Department must consider whether, in light of this opinion and the facts as they exist after remand, to offer the Mother a case plan with a goal of reunification. After remand, if circumstances exist that satisfy the statutory requirements for termination without such a plan, the Department may proceed accordingly. If the Department offers the Mother a case plan and she fails to comply, the Department may again petition to terminate her parental rights.
Id. at 296.
REVERSED AND REMANDED.
BLANC, PETER D., Associate Judge, concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
I respectfully dissent. I agree with the majority that the order has mistakes in it and does not accurately reflect certain factual details. I disagree, however, that the court erred in its ultimate disposition  the termination of the mother's parental rights.
In this case, the mother had been offered a case plan concerning her two older children, with which she failed to comply. That failure resulted in the termination of her parental rights to her two older children. That fact alone provided the court with the ability to find sufficient grounds for termination.
However, there was additional evidence. The mother acknowledged she had been arrested more than twenty times. She had been out of jail only a few weeks prior to the birth of S.R. Shortly after S.R.'s birth, the mother asked a stranger to drive her to see her baby and then robbed the victim. This arrest and conviction resulted in a two-year prison sentence followed by two years of probation. The guardian ad litem testified he believed it to be in the best interests of the child that W.R.'s parental rights be terminated and the child adopted by the custodians.
In a proceeding for termination of parental rights, the court must determine by *917 clear and convincing evidence that one of the grounds for termination of parental rights exist under section 39.806, Florida Statutes (2003). The court must then consider the manifest best interests of the child, pursuant to section 39.810, Florida Statutes (2003). The trial court complied with these procedural requirements.
Applying these requirements to the facts of this case, the court found the termination of W.R.'s two older children satisfied the statutory grounds for termination. The court further found the mother had engaged in conduct towards the child demonstrating that continued involvement threatened the life and well being of the child. In this regard, the court relied upon the mother's extensive arrest history, which included the robbery following almost immediately on the birth of S.R. and resulting in two years of incarceration.[2]
The court found the manifest best interests of the child supported the termination of the mother's rights to allow for the child's adoption by the child's custodians. In my view, the trial court correctly granted the petition for termination of the mother's rights.[3] I would therefore affirm but remand the case for correction of the order.
NOTES
[1] Section 39.806(1)(c) permits a petition to be filed where a parent has engaged in conduct toward a child that demonstrates that the continued involvement of the parent threatens the child at issue regardless of the provision of services. Section 39.806(1)(i) provides that the termination of parental rights as to a sibling is sufficient grounds to file a petition.
[2] The order states that the mother is incarcerated for a period of 4 (four) years. Actually, the mother received a two-year period of incarceration followed by a two-year period of probation. This error should be corrected upon remand. The order also states that the mother's mental health and substance abuse issues uncovered in the prior termination proceedings had not been addressed "in any way." The majority is correct that this statement is not accurate and should be corrected upon remand.
[3] I disagree with the majority's reliance on C.B. v. Department of Children & Families, 874 So.2d 1246 (Fla. 4th DCA 2004). Each case dealing with parental rights must be evaluated on its own terms. In C.B., the issue was abandonment based upon the mother's incarceration. However, the evidence revealed significant efforts on the part of the mother to keep in contact with the child. Furthermore, there was substantial evidence to support the mother's ability to make a new start with the child. I therefore do not find C.B. controls the outcome of this case.