898 So.2d 998 (2005)
R.K., Mother of A.K., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D03-3734.
District Court of Appeal of Florida, Fifth District.
March 4, 2005.
*999 R.K., Oviedo, pro se.
Charles D. Peters, Department of Children and Families, Orlando, for Appellee.
THOMPSON, J.
The mother of A.K. appeals the termination of her parental rights.[1]
The trial court terminated the mother's parental rights pursuant to sections 39.806(1)(c) and 39.806(1)(i), Florida Statutes. To terminate parental rights under section 39.806(1)(c), the court must *1000 find by clear and convincing evidence that "the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services." This generally requires proof that the parent suffers from a condition that makes probable the prospect of future abuse or neglect of a child and that the condition was one which was likely to continue. Dept. of Children and Families v. B.B., 824 So.2d 1000 (Fla. 5th DCA 2002) (citing Padgett v. Dept. of Health and Rehabilitative Servs., 577 So.2d 565 (Fla.1991)).
The required showing under section 39.806(1)(i) is similar. Section 39.806(1)(i) provides that a petition for termination of parental rights may be filed "[w]hen the parental rights of the parent to a sibling have been terminated involuntarily." Parental rights may be terminated under section 39.806(1)(i) only if the state proves by clear and convincing evidence both a prior involuntary termination of rights to a sibling and a substantial risk of significant harm to the current child and that the termination of parental rights is the least restrictive means of protecting the current child from harm. Dept. of Children & Families v. F.L., 880 So.2d 602, 610-11 (Fla.2004).[2]Id. at 610-11. The circumstances surrounding a prior involuntary termination are highly relevant to a court's determination of whether a current child is at risk and whether termination is the least restrictive way to protect the child. Id. at 611. Padgett requires that a termination decision be based not on any single act or omission with respect to a previous child, but rather on the totality of circumstances surrounding the current petition. F.L., 880 So.2d at 608.
The circumstances surrounding the petition in the instant case are that the mother admittedly has a 15-year history of drug abuse and prostitution. She has been arrested 59 times for prostitution and was in prison at the time of trial. The mother's parental rights to A.K.'s older sibling were terminated in June 2000, because the mother failed to maintain contact with the sibling, failed to comply with her case plan, and failed to complete drug treatment programs. She was using cocaine while she was pregnant with that child. Further, the mother continued to be arrested, to enter pleas, and to serve jail time in the years the case of the middle child was before the court. She was also using cocaine while pregnant with the oldest sibling, who was born cocaine positive, and the mother admitted to having used cocaine on the day of that child's birth. The mother lost custody of the oldest sibling to its father.
Two or three months after becoming pregnant with A.K., the mother voluntarily entered a residential drug treatment program, where she did very well for a time. *1001 The mother tested negative for drugs throughout her stay there, and A.K. tested negative for cocaine at birth. However, against the advice of the counselors, the mother decided not to complete the program and left in April 2003. Because the mother left the residential facility, the Department of Children and Family Services (DCF) sheltered A.K. The mother violated probation and went to prison on a conviction for cocaine possession that predated the conception of A.K. In July 2003, DCF petitioned for termination of parental rights.
Although there was no evidence that the mother had abused drugs between the time she entered the rehabilitation center and the day of trial, for most of that time, she was incarcerated or under the supervision of the rehabilitation center. Furthermore, she refused the DCF's offer of voluntary services and failed to take advantage of the opportunities afforded her by the center, which included vocational and transitional help. The mother testified that she refused DCF's offer of voluntary services because she thought all of A.K.'s needs were being met at the center, but she left the center only 20 days after A.K.'s birth and moved into the home of a convicted domestic abuser. Not only did she not complete the center's treatment program, she violated probation and was incarcerated, thus insuring that A.K. would be placed in foster care.
The trial court found that the mother had admitted that she had a 15-year history of drug abuse and criminal activity. Further, the court found that she did not avail herself of the opportunities available to her to safeguard A.K. Rather, she failed to take the proper steps to deal with her cocaine addiction, with her lack of stable housing, and employment, and with her ongoing criminal associations. The court thought she entered the center so A.K. would be born drug-free and left once that goal had been accomplished. Thus, the court found that the mother did not have the ability to care for A.K. to the extent that A.K.'s safety, well-being, and physical, mental, and emotional health would not be endangered if A.K. were returned to her.
Drug addiction is one type of behavior that may warrant termination of parental rights because it can constitute harm to the child, and the parent may not be amenable to treatment despite the provision of services. S.J. v. Dept. of Children and Family Servs., 866 So.2d 770 (Fla. 4th DCA 2004) (affirming termination of parental rights where mother had twice failed to complete outpatient treatment, refused inpatient treatment, and was arrested four times while DCF was providing services); see also Atwell v. Dept. of Health and Rehabilitative Servs., 675 So.2d 1030 (Fla. 5th DCA 1996) (affirming termination where the evidence showed that the risk of future abuse was likely, considering mother's past conduct, and that there was no reasonable basis to conclude that her behavior would improve).
Here, the mother demonstrated that the risk of future neglect was high, considering her past conduct and her current conduct. Compare, e.g., Atwell, 675 So.2d 1030. Although she was apparently drug-free during her supervision in the center and while incarcerated, she has not obtained treatment for the constellation of problems she has, which problems were manifested when she left the center. We cannot say that the trial court abused its discretion in terminating the mother's parental rights. See N.L. v. Dept. of Children and Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003) ("Our standard of review is highly deferential. A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly *1002 erroneous or lacking in evidentiary support."). To require a child to suffer abuse in those cases where mistreatment is virtually assured is illogical and directly adverse to society's fundamental policy of preserving the welfare of its youth. Padgett, 577 So.2d at 570.
AFFIRMED.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] The mother proceeds pro se because her court appointed attorney withdrew on the ground that a thorough, conscientious, and good faith review showed no meritorious grounds on which to base an appeal. See N.S.H. v. Dept. of Children and Family Servs., 843 So.2d 898 (Fla.2003).
[2] We held in A.B. v. Department of Children & Families, 816 So.2d 684 (Fla. 5th DCA 2002), that a parent whose rights have been terminated involuntarily with respect to one child may avoid termination with respect to another child if he or she comes forward with evidence that the circumstances or pattern of conduct that led to termination of parental rights to the other child cannot serve as a predictor of his or her conduct with the child at issue. A.B. was disapproved in F.L., 880 So.2d 602 (Fla.2004), which held that the A.B. unconstitutionally shifted the burden of proof to the parent. A parent is not required to show evidence of changed circumstances to avoid a termination of rights under section 39.806(1)(i). Id. at 609. The instant case was tried before F.L. was issued, but the court stated that it would find termination of parental rights appropriate no matter which party had the burden of proof.