PER CURIAM.
The father, A.J., appeals the order terminating his rights to parent five children, three girls and two boys, based on allegations that he and his second wife, the children’s stepmother, abused two of the daughters by digitally penetrating the daughters to check for sexual activity. Because there was sufficient evidence of sexual abuse as defined by section 39.01, Florida Statutes (2010), and evidence that, under the totality of the circumstances, all the girls were at substantial risk of significant harm, we affirm the termination as to the daughters. However, we reverse the portion of the order terminating the father’s rights to parent the sons, as there was not sufficient evidence in the record supporting the trial court’s finding that the boys had been harmed or were at risk of being harmed.
This court has previously explained the standard of review in termination of parental rights appeals:
The adjudication of a case involving termination of parental rights involves a two-step process. First, the court must find by clear and convincing evidence that one of the grounds set forth in 39.806, Florida Statutes, has been proven. Second, the court must determine what outcome is in the manifest best interest of the children. Furthermore, the petitioning party must establish that termination of parental rights is the least restrictive means of protecting the child from harm. On appeal, the appellate court’s task:
Is not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute [its] judgment for that of the trier of fact. Instead, [it] will uphold the trial court’s *987 finding “[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court’s judgment in favor of terminating ... parental rights.” Where the trial court’s finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence, the appellate court has no choice but to affirm.
D.G. v. Dep’t of Children and Families, 77 So.3d 201, 206-07 (Fla. 4th DCA 2011) (citations omitted).
DCF may seek to terminate parental rights based on abuse of a sibling or another child, but the termination decision regarding the current child must be based “on the totality of the circumstances surrounding the current petition.” Florida Dep’t of Children and Families v. F.L., 880 So.2d 602, 611 (Fla.2004) (citing Padgett v. Dep’t of Health and Rehab. Servs., 577 So.2d 565 (Fla.1991)). Further, DCF must show that the parent’s conduct poses a substantial risk of significant harm to the current child and that termination is the least restrictive means to protect the child. Id. Although the termination petition in F.L. was based on the involuntary termination of rights as to a sibling under section 39.806(l)(i), Florida Statutes, our courts have required the state to show a risk of harm to the current child where the petition is based on other grounds. See In re M.F., 770 So.2d 1189 (Fla.2000) (dependency petition based on sex offense against another child); J.J. v. Dep’t of Children and Families, 994 So.2d 496, 501 (Fla. 4th DCA 2008) (termination petition based on egregious conduct toward a sibling under section 39.806(l)(f)); J.F. v. Dep’t of Children and Families, 890 So.2d 434 (Fla. 4th DCA 2004) (termination petition based on manslaughter/felony assault of another child under section 39.806(l)(f) and (h)).
But see In re E.R., 49 So.3d 846 (Fla. 2d DCA 2010) (no need to show nexus where petition for termination of rights is based on sibling’s death from shaken baby syndrome under subsection (l)(h), and certifying conflict with Fourth DCA’s opinion in J.F.), cause dismissed, 61 So.3d 411 (Fla. 2011), and review denied, 60 So.3d 1054 (Fla.2011).
We reject the father’s first argument that there was not sufficient evidence of sexual abuse. DCF relied on section 39.806(l)(g), Florida Statutes, which provides in relevant part:
The parent or parents have subjected the child or another child to aggravated child abuse as defined in s. 827.03, sexual battery or sexual abuse as defined in s. 39.01, or chronic abuse.
§ 39.806(l)(g), Fla. Stat. (2010).
After reviewing the record, we find that competent substantial evidence supports the trial court’s finding of clear and convincing evidence of sexual abuse as defined in section 39.01, Florida Statutes (2010). Next we address the father’s other argument, that evidence of abuse of one child, M.J., was not sufficient to terminate his rights to the other children. We reject this argument as to the daughters, as the evidence reflected that all three were subjected to the abuse. However, we agree with the father that there was not sufficient evidence that the sons were harmed or are at risk of being harmed. The only evidence at trial regarding any harm to the sons, A.J., Jr. and T.J., was that the former had been Baker Acted after being removed from the home, and the latter was scheduled for a psychological evaluation. No details or context were provided. Thus, not only was it unclear what the nature and extent of the mental health issues were, it was also unclear that any mental health issues had anything to do *988 with the abuse occurring in the home.[1] As there was insufficient evidence that the sons were at a substantial risk of significant harm, it follows that termination was not the least restrictive means of protecting the sons. We affirm in part, reverse in pai't, and remand for further proceedings. See JJ. v. Dep’t of Children and Families, 994 So.2d 496, 503 (Fla. 4th DCA) (holding that DCF failed to prove the mother posed a substantial risk of significant harm and that termination was least restrictive means to protect the children, and remanding for “continuation of the children’s dependency status, formulation of a case plan for the mother, and for further proceedings ....”)

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

WARNER, HAZOURI and CIKLIN, JJ., concur.

. The evidence at the adjudicatory hearing reflected that the children had lived on and off with their mother and would reside with the father and their stepmother when their mother either abandoned them or was in jail. The stepmother testified that A.J., Jr. had anger and aggression issues when he moved in with them, and that she believed this was based on "a lot of stuff that was going on at his mother’s house and that the kids in the neighborhood knew about....” When she moved him to a different school, the problems subsided.