835 So.2d 1189 (2002)
L.B., mother of A.M.S. and B.C.B., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D02-2592.
District Court of Appeal of Florida, First District.
December 30, 2002.
Rehearing Denied January 30, 2003.
*1190 Patricia L. Parker, Esq., Jacksonville, for Appellant.
Michael Paul Eng, Assistant General Counsel, Jacksonville, for Appellee.
*1191 LEWIS, J.
Appellant, the natural mother of A.M.S. and B.C.B., challenges an order terminating her parental rights to her children. Appellant raises two arguments on appeal. Appellant argues that the trial court's finding that her continuing involvement with the children threatened their well-being or lives pursuant to section 39.806(1)(c), Florida Statutes (2001), was not supported by the evidence. We agree and hold that the trial court's finding was not supported by clear and convincing evidence. Appellant also contends that the Department of Children and Families ("Department") failed to establish that termination of her parental rights was the least restrictive means available to the trial court. Because we also agree with appellant as to this issue, we reverse and remand for further proceedings.
In November 2000, the Department filed Shelter Petitions on the children who are now ages four and two. The Department alleged that the children were victims of threatened harm as their parents had engaged in domestic violence and as appellant had attempted suicide on several occasions. Appellant had also violated the terms of the domestic violence injunction that the trial court had previously granted her husband, the children's natural father ("father"). Thereafter, the trial court ordered that both children be detained in shelter care. Subsequent to the children's detention, the Department filed a Petition for Dependency as to both children, alleging that appellant and the father committed willful acts that caused or were likely to cause the children's physical, mental, or emotional health to be significantly impaired. Appellant, who suffers from epilepsy and depression, later consented to dependency. The children were initially placed with their paternal aunt and uncle and were later placed with shelter parents.
In the initial and updated case plans, both having the goal of reunification, appellant was instructed to: (1) complete a parenting skills class with 100% attendance and provide the Department with a certificate of completion, (2) undergo a psychological evaluation and follow through with all recommendations made by the therapist, (3) undergo an updated psychiatric evaluation and follow through with all recommendations made by the therapist, (4) sign releases of information at all hospitals where she received psychiatric treatment allowing the Department to obtain copies of her records, (5) complete a drug/alcohol evaluation, following all recommendations for treatment, and submit to random drug screens at the Department's request, (6) complete a Hubbard House evaluation, (7) obtain and maintain stable employment for a period of six months prior to the return of the children, (8) obtain and maintain stable housing for a period of six months prior to the return of the children, (9) pay child support, (10) provide the names, dates of birth and social security numbers of anyone residing in the home or having extended contact with the children, (11) refrain from any other illegal activity, and (12) engage in supervised bi-weekly visitation with the children once the visitation issue with the injunction was clarified. The father's case plan was essentially identical to appellant's plan.
Thereafter, on November 23, 2001, appellant struck the father with her automobile, drove away, and was later arrested. The children, who were still in shelter custody, were not present during this incident. Appellant subsequently pled guilty to the lesser offense of leaving the scene of an accident and was placed on two years' probation.
On February 13, 2002, the Department filed a Petition for Termination of Parental *1192 Rights and Permanent Commitment as to both appellant and the father, alleging that both parents were guilty of severe continuing abuse or neglect of the two children, in that they engaged in conduct towards the children that demonstrated that the continuing involvement of the parents in the parent-child relationship threatened both the lives and well-being of the children regardless of the provision of services pursuant to section 39.806(1)(c). The Department also alleged that the children had continued to be neglected or abandoned for the previous twelve months or more. Regarding her case plan, the Department alleged that appellant failed to comply with the recommendations of her psychological evaluation, pay child support, and refrain from illegal activities by getting arrested for leaving the scene of an accident with injuries and for driving with a suspended license. Thus, according to the Department, termination of both parents' parental rights served the manifest best interests of the children.
During the termination hearing, which occurred on two separate days, Dr. Bloomfield, the father's psychologist, testified that he believed the children would be in danger with both parents because of the "emotional play" that occurred between them. Dr. Bloomfield described the parents' relationship as "literally toxic." Thus, he opined that a high risk of dangerousness existed for the children if they were returned to both parents.
Luanne Edwards, appellant's marriage and family therapist, testified that appellant had consistently been taking her medicine for epilepsy and depression, had attended her appointments, had recently moved out of the family home, and had enrolled herself in college. Edwards opined, however, that appellant had not progressed to the point that the children could be returned to her because, while appellant was not likely to physically harm the children, the children could be placed in harm's way by appellant's negative interaction with someone else. Edwards then testified that appellant could be allowed supervised visitation with her children because appellant could handle herself in such a situation. Edwards did not foresee a problem with such as long as appellant did not enter into a situation where conflict might arise with the father. On cross-examination, Edwards testified that she had noticed some improvement in appellant's case, in that appellant had reported that there had been times when she had seen the father, and rather than provoke a fight or an argument with him, she would instead leave his presence.
Jean Johnson, a family services counselor employed by the Department, testified regarding appellant's compliance with her case plan. According to Johnson, appellant had completed the parenting skills classes with perfect attendance and had consistently visited with the children. While appellant was still attending counseling sessions, she had completed her psychological evaluation and had signed releases at all hospitals where she had received psychiatric care in order that the Department could monitor her progress. Johnson could not definitively state as to whether appellant had completed an updated psychiatric evaluation. Yet, appellant had completed a drug and alcohol evaluation as well as a Hubbard House evaluation regarding domestic violence. Although appellant had not obtained stable employment at the time of the termination hearing, she did receive disability benefits and she had moved from the family home. While appellant had not paid child support either, she had purchased clothes for the children. At the close of the first day of the hearing, the Department contended that the termination case as to both parents was not an actual abuse case but was *1193 rather one where the potential for abuse or neglect existed for the children.
During the second day of the termination hearing, appellant's mother testified that appellant had separated from the father approximately two and one-half months prior to the hearing. While appellant had initially resided with a friend, she had since moved to her father's home. Appellant's father testified that he drove appellant to her medical appointments, as she is not able to drive due to her epilepsy, and that appellant had recently enrolled in a two-year computer program. According to appellant's father, he also made certain that appellant took her daily medications.
Following the hearing, the trial court entered its Order of Disposition on Termination of Parental Rights, in which the court noted that it had dismissed the termination petition as to the father. Regarding appellant, however, the court found by clear and convincing evidence that appellant was guilty of severe and continuing abuse or neglect of the children, in that she engaged in conduct towards the children, and more particularly their father, that demonstrated that the continuing involvement of the parent-child relationship would threaten the lives or well-being of the children pursuant to section 39.806(1)(c). The court found that appellant had been diagnosed with severe mental illness since she was a small child and had continued to have medication management issues that left her vulnerable to explosive and dangerous outbursts of anger primarily directed towards her husband.
Although the court determined that there were no specific references of any harm that appellant may have caused the children, the court determined that appellant's continued lack of control in perpetrating domestic violence on the father would threaten the well-being of the children. The court concluded that appellant stalked and deliberately struck the father with her automobile, causing him significant injuries. While the children were not present during this incident, the court found that such action, along with the continued domestic violence, was of such intensity, magnitude, and severity that the children's lives were endangered. The court also found, pursuant to section 39.806(1)(e), Florida Statutes (2001), that appellant continued to neglect the children, and that she failed to substantially comply with her case plan by not participating in a psychological evaluation and by not following through with all recommendations made by the therapist, by not paying child support, and by not refraining from illegal activity.
Regarding the children's best interests, the court determined that such interests were served by terminating appellant's parental rights notwithstanding its dismissal of the termination petition as to the father. The court, in reaffirming the children dependent, concluded that the father continued to focus on his case plan and that he had already taken steps to file for divorce from appellant, which was a listed task in his updated case plan. The court concluded that any potential contact between the mother and the children in the presence of the father would be dangerous to the children's physical and emotional well-being. This appeal followed.
Appellant contends that the court's finding that her continued involvement with the children threatened their well-being or lives pursuant to section 39.806(1)(c) is not supported by the evidence. We agree. Pursuant to section 39.806(1)(c), when a parent engages in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional *1194 health of the child, irrespective of the provisions of services, such conduct constitutes grounds for the termination of that parent's parental rights. The Department must prove the grounds for termination of parental rights by clear and convincing evidence. § 39.809(1), Fla. Stat. (2001); see also In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995). A trial court's determination that evidence is clear and convincing will not be overturned unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing. C.W. v. Dep't of Children and Families, 814 So.2d 488, 492 (Fla. 1st DCA 2002).
Here, in its findings in support of termination pursuant to section 39.806(1)(c), the trial court found that, due to appellant's medication management issues that leave her vulnerable to explosive and dangerous outbursts primarily directed at the father, her continued lack of control in perpetrating domestic violence on the father would threaten the well-being of the children. However, during the termination hearing, Edwards testified that appellant had been consistently taking her medications. While Edwards testified that appellant had not progressed enough in therapy to regain custody of the children, she did testify that she was comfortable with appellant engaging in supervised visitation with the children and did not foresee a problem with such as long as appellant did not enter into a situation where conflict might arise with the father.
Moreover, the testimony given by both Edwards and Dr. Bloomfield emphasized the "toxicity" or "lethal" nature of appellant's relationship with the father. This emphasis is clearly evident in the termination order as the trial court made multiple references to appellant's actions towards the father: appellant's "conduct towards [the] children and more particularly their father," "appellant's lack of control in perpetrating domestic violence on the father," "any potential contact between [appellant] and the children in the presence of the father would be a danger to the physical and emotional well-being of the children." Yet, Edwards testified that appellant had recently moved from the family home. Appellant's mother testified that appellant had done so approximately two and one-half months prior to the termination hearing. Furthermore, one of the tasks in the father's updated case plan involved securing a divorce from appellant.
Thus, based upon the foregoing, we find that the record is devoid of clear and convincing evidence to support the trial court's termination of appellant's parental rights pursuant to section 39.806(1)(c). Although appellant struck the father with her automobile, the children were not present during this incident. In addition, the entire basis for the Department's termination petition and the court's termination order regarding section 39.806(1)(c) is refuted in the record. While appellant may have engaged in domestic violence towards the father, she has since taken steps, by moving from the family home and by consistently taking her medications, to avoid similar incidents. Moreover, based upon the father's updated case plan, the father is to secure a divorce from appellant. In addition, there is no evidence in the record that establishes that appellant harmed the children. Therefore, we hold that the trial court erred in terminating appellant's parental rights pursuant to section 39.806(1)(c), as the record evidence was neither clear nor convincing.
Furthermore, although the trial court did not explicitly set forth that the children would be in danger of prospective abuse or neglect if returned to appellant, it did determine that the parent-child relationship between appellant and the children *1195 would threaten the lives or well-being of the children. During the termination hearing, the Department averred that this was not an actual abuse case but was rather a case where there was a potential for abuse or neglect to the children. The issue in prospective neglect or abuse cases is whether future behavior, which will adversely affect the child, can be clearly and certainly predicted. Palmer v. Dep't of Health and Rehabilitative Servs., 547 So.2d 981, 984 (Fla. 5th DCA 1989). If the parent is so afflicted that no reasonable basis exists for improvement, then the court may find prospective neglect or abuse. Id. In Palmer, the court affirmed the termination order as no reasonable prospect existed that the father could or ever would be "cured" of, or successfully treated for, pedophilia. Id. In contrast, in In the Interest of G., 592 So.2d 778, 778 (Fla. 4th DCA 1992), the court, in reversing and remanding the termination order, found that, unlike the father in Palmer, the mother's chances of recovery from substance abuse were good, as the mother had maintained her sobriety, obtained secure employment, and secured a stable residence.
Here, while appellant suffers from both depression and anger management issues, Edwards did not testify that no reasonable basis existed for improvement. On cross-examination, she testified that she had seen some improvement, in that appellant had reported that there had been times when she had seen the father, and rather than provoke a fight or an argument with him, she would instead leave his presence. Thus, based upon this testimony, a reasonable basis did exist to find that appellant's problems could be improved.
Although the trial court erred in terminating appellant's parental rights under section 39.806(1)(c), the trial court also based its termination order on section 39.806(1)(e), in finding that appellant failed to substantially comply with her case plan. Section 39.806(1)(e) provides for the termination of parental rights when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. Appellant failed to aver on appeal that this determination was incorrect. Instead, appellant argued that she was attempting to comply with her case plan. See K.E. v. Dep't of Children and Families, 816 So.2d 838, 839 (Fla. 5th DCA 2002) (affirming termination order because the mother failed to specifically argue that the State failed to prove that she had not substantially complied with her case plan and instead argued that she deserved another chance). Therefore, although it is questionable as to whether appellant did, in fact, fail to substantially comply with her case plan, because the findings of the trial court are clothed with the presumption of correctness and will not be disturbed absent a showing that they are not supported by credible evidence, we must presume that the trial court correctly found that appellant failed to substantially comply with her case plan. See Peacock v. Melvin, 652 So.2d 951, 952 (Fla. 1st DCA 1995).
Notwithstanding the trial court's presumptively correct findings pursuant to section 39.806(1)(e), the Department also had the burden of demonstrating that the termination of parental rights was the least restrictive means of protecting the children from serious harm, as parental rights constitute a fundamental liberty interest. See Padgett v. Dep't of Health and Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). Appellant asserts that the Department failed to establish that termination of her parental rights was the least restrictive means available to the court. We agree. The least restrictive means test in the context of the termination of a *1196 parent's parental rights is not intended to preserve the parental bond at the cost of the child's future. Dep't of Children and Families v. B.B., 824 So.2d 1000, 1009 (Fla. 5th DCA 2002). Rather, it simply requires that those measures short of termination should be utilized if such measures can permit the safe reestablishment of the parent-child bond. Id.
In the instant case, while the trial court terminated appellant's parental rights, the trial court dismissed the termination petition as to the father. Therefore, the children, who are still legally dependent, will not be placed for adoption as the father continues to focus on his case plan. Thus, the termination order's sole effect upon the children, who remain in shelter custody, was to sever their contact with appellant. Appellant, who has taken positive steps in order to change her circumstances, consistently visited with the children under supervision. Moreover, there is no record evidence that this visitation with the children caused or threatened harm to their lives or well-being. Edwards actually testified that appellant was capable of supervised visitation. As such, because the least restrictive means test requires that those measures short of termination be utilized if such can permit the safe reestablishment of the parent-child bond, and because there has been no showing that supervised visitation would harm the children while the father continues to focus on his case plan, we conclude that the termination of appellant's parental rights was not the least restrictive means available to the trial court. See K.M.B. v. Dep't of Children and Families, 793 So.2d 39, 40 (Fla. 2d DCA 2001) (reversing and remanding the termination order as the trial court failed to consider the least restrictive means of protecting the children from harm because the children were placed in their father's custody and, thus, were removed from any danger they may have been in while living with the mother). Accordingly, we reverse and remand for further proceedings.
REVERSED and REMANDED.
KAHN and BENTON, JJ., concur.