863 So.2d 476 (2004)
In the Interest of G.C.A., J.L.A., E.G., Jr., E.A.M., G.E.M., I.D.M., and N.B.A., children.
O.M. and A.A., Appellants,
v.
Department of Children and Family Services, Appellee.
No. 2D02-5538.
District Court of Appeal of Florida, Second District.
January 21, 2004.
*478 J.L. "Ray" LeGrande of LeGrande & LeGrande, P.A., Fort Myers, for Appellants.
William Byrne Isaacs, Port Charlotte, for Appellee.
COVINGTON, Judge.
O.M. and A.A. appeal the trial court's termination of parental rights to seven of her children, three of whom A.A. fathered. We affirm as to the child, G.E.M., reverse as to the remaining children, and remand for further proceedings.
The mother has a long history with the Department of Children and Family Services that primarily involves allegations of neglect. Many of these incidents occurred up to ten or more years ago when she was involved with the fathers of her older children. Two of her nine children, the older boys, are residing with their father or a relative.
The Department sheltered all but the youngest child in June 2000, based upon allegations of neglect by the mother, who stipulated to dependency without admitting the allegations. The court entered a dependency adjudication in August 2000. After the youngest child's birth in January 2002, the Department included N.B.A. in the dependency proceedings. The court adjudicated her dependent at the time it adjudicated the termination of parental rights. It had previously entered defaults at the advisory hearing as to the other children's fathers who are not part of this appeal.
At the inception of the case, the Department treated A.A. as a non-offending parent. However, near the time of the trial the oldest daughter, G.E.M., accused her stepfather of sexual abuse that allegedly occurred three years earlier. The Department has never pursued this allegation of abuse. G.E.M. testified that A.A. improperly touched the outside of her clothed buttocks with his hand.
The Department's petition for termination of parental rights made a twofold allegation under sections 39.806(1)(c) and 39.806(1)(e), Florida Statutes (2002), based on neglect and abandonment. The allegation of abandonment is predicated solely on the parents' failure to provide support for the children while they were in the Department's custody.
The Department's counselors testified at the adjudicatory hearing that the mother had substantially complied with the tasks of her case plan. She and A.A. lived alone in a clean, furnished four-bedroom apartment, had undergone psychological evaluations, and visited regularly with the children. The mother held a verified, full-time position at a department store, had successfully completed a parenting class, maintained contact with the Department, and had signed all requested releases. The father was employed as a roofer. Despite this testimony, and apparently because of the mother's history with the Department and G.E.M.'s allegation of A.A.'s sexual abuse, the counselors recommended termination of parental rights to allow permanent placement of the children with adoptive or foster families. The visitation supervisor testified that the children, with the exception of G.E.M., seemed happy to see their parents, displayed affection toward each other, and were obviously *479 bonded with the mother. Twelve-year-old G.E.M. ultimately refused to participate in visitation. She was happy with her foster parents and new life.
The court terminated the mother's parental rights to all seven children and A.A.'s rights to the three youngest children. The termination was based upon abandonment, due to the parents' failure to support the children during the time they had been in the Department's custody and due to the dependency allegations of neglect, excessive corporal punishment, A.A.'s alleged sexual abuse of G.E.M., and the mother's failure to take action when G.E.M. reported A.A.'s abuse to the mother. The court accepted the Department's allegation that the parents' conduct toward the six older children evidenced that their continuing parental involvement with the youngest child, N.B.A., threatened her life, safety, or well-being irrespective of the provision of services. It did not base its ruling on the allegation of failure to substantially comply with the case plans under section 39.806(1)(e). Concluding that there was no suitable custody arrangement with relatives and after evaluating the manifest best interest factors, the court deemed that it was in the children's best interest that the court terminate parental rights.
The court erred in terminating parental rights under section 39.806(1)(c). As this court declared in In re C.W.W., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001):
[T]o terminate parental rights under section 39.806(1)(c), the trial court must find that the child's life, safety, or health would be threatened by continued interaction with the parent regardless of any services provided to the parent. In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent.
The Department must prove the allegations supporting the termination of parental rights by clear and convincing evidence. In re C.W.W., 788 So.2d at 1023 (citing Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991)). Three sequential requirements must be met: first, the court must find the threat to the children's life, safety, or health by the continued interaction with the parent regardless of the provision of services; second, if the court makes such a finding, the Department must then prove there is no reasonable basis to believe the parent will improve; and third, the Department must show that termination is the least restrictive means of protecting the children from serious harm. M.H. v. Dep't of Children & Families, 28 Fla. L. Weekly D2471, 2003 WL 22432789 (Fla. 1st DCA Oct.28, 2003). "Where the record demonstrates a reasonable basis exists to find the parent's problems could be improved, parental rights cannot be terminated." Id. (citing L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1195 (Fla. 1st DCA 2002)).
Almost all of the evidence the court derived to support its findings are based on incidents that occurred many years ago, with the exception of O.M.'s and A.A.'s failure to pay support to the Department while the children were in its custody. The original dependency allegations did not cite abandonment. The mother has shown clear success in dealing with her former problems and has maintained a clean and furnished household and regular employment. The four-bedroom apartment awaits the children's return. Over the course of the dependency, the mother regularly visited with the children, with whom she enjoys a loving relationship. Both parents' substantial compliance with numerous case plan tasks and obvious improvement *480 contradict any conclusion that there is no reasonable basis to believe the parents will improve.
The Department has also failed to show that termination is the least restrictive means to protect the children. The least restrictive means test requires that those measures short of termination be utilized if such can permit the safe reestablishment of the parent-child bond. L.B., 835 So.2d at 1196. Although there are no available relative placements, the Department has not adduced sufficient evidence that the children could not be reunited gradually with the parents to allow everyone to adjust to the demands of a large family. Supervised visitation has gone well for a long period of time, and the parents have benefitted from the provision of services in visible and substantial ways. We therefore reverse the termination of the mother's parental rights as to the younger six children.
As to the father, the Department conceded that the older children's truancy and similar findings did not support the termination of A.A.'s parental rights to his natural children. See, e.g., N.S. v. Dep't of Children & Families, 857 So.2d 1000, 1001 (Fla. 5th DCA 2003). Neither do G.E.M.'s sexual abuse allegations against A.A. justify the termination of his parental rights to his natural children. A showing by the Department that a parent committed a sex act on one child does not alone constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling. See In re M.F., 770 So.2d 1189, 1194 (Fla.2000) (citing Padgett, 577 So.2d 565). See also In re A.C., 848 So.2d 433, 433 (Fla. 2d DCA 2003) (reversing dependency adjudication of two sons based solely on Department's showing that daughter's allegation of father's sexual abuse placed the sons at risk).
We affirm, however, the termination of the mother's parental rights as to G.E.M., which was based on other factors in addition to the sexual abuse allegations. G.E.M.'s sexual abuse allegations are akin to those this court encountered in In re A.C., 848 So.2d 433, 433 (Fla. 2d DCA 2003), where we harbored reservations about their truthfulness. As we did in A.C., we conclude here that we cannot question the trial court's assessment of the mother's credibility. See id. Nevertheless, that alone does not affect our reversal as to the other six children.
Accordingly, we affirm the termination of O.M.'s parental rights as to G.E.M., but reverse the termination of O.M.'s parental rights as to the other six children and the termination of A.A.'s parental rights to his three natural children.
Affirmed in part, reversed in part, and remanded.
ALTENBERND, C.J., and NORTHCUTT, J., concur.