THOMAS, J.
In this consolidated appeal, the parents (Appellants) challenge the trial court’s order terminating their parental rights. Appellants’ parental rights were previously terminated for six other children between 2005 and 2009. When V.B., the child in question, was born, the Department of Children and Families (the Department) immediately removed him from Appellants. Appellants argue that the trial court erred in terminating their parental rights without competent, substantial evidence to constitute clear and convincing evidence that they pose a substantial risk of harm to V.B. Appellants argue further that termination of parental rights is not the least restrictive means of protecting V.B. from harm. For the reasons discussed below, we reverse and remand for further proceedings.

Facts and Procedural Background

In March 2012, the Department filed a shelter petition regarding V.B., Appellants’ three-day-old child. The child was sheltered from the hospital based upon the termination of Appellants’ parental rights of five children on December 5, 2008, and a sixth child on June 12, 2009. The termination of five of their children in 2008 was based on neglect, including medical neglect. The termination of their sixth child in June 2009 was an expedited termination, immediately from the hospital, based upon the prior neglect. Appellants had been involved with the Department from 2005 to 2009 in relation to the prior terminations.
The petition alleged there was probable cause of substantial risk of immediate harm to V.B. based upon Appellants’ history with the Department and the circumstances surrounding the prior terminations of their six other children. The Department did not offer Appellants a reunification case plan, but sought adoption of V.B. with the same parents who adopted Appellants’ six other children.
At the hearing on the termination of parental rights for V.B., the Department submitted evidence of the termination of parental rights in Appellants’ two prior cases for their previous six children, including the hearing transcripts. The Department sought termination based upon three grounds: First, pursuant to section 39.806(l)(i), Florida Statutes, addressing termination based upon prior involuntary termination of parental rights of other children; second, pursuant to section 39.806(l)(c), addressing termination based upon a continuing course of conduct; third, pursuant to section 39.806(1)(Z), addressing termination when there are at least three prior removals of a child when the removals were because of the acts of the *1199 parents.[1]
A witness who served as Appellants’ “lead family care counselor” testified she met with Appellants about V.B. She was aware of the prior removal of Appellants’ children, as she worked for the Department when those terminations occurred. She had inquired into what had changed in Appellants’ lives from 2008 and 2009. The Father told her he was willing to be more cooperative, and the Mother said she would quit being stubborn.
The lead family counselor testified that Appellants visited with V.B. once a week and the visits went well, but Appellants did not call her between visits to check on V.B. Appellants did not ask for assistance with any type of services, and they were not offered services because they did not have a case plan. She saw nothing showing that Appellants were committed to making any changes, and in her view, Appellants did not have the ability to care for their child. The witness asserted that Appellants had previously been given three case plans, none of which were completed. She visited Appellants’ home twice; it was clean, a room was prepared for the baby, and it was adequate and appropriate. Appellants’ home included a computer, a TV, and furnishings. There were no indications that they did not have food. They had a home phone and Mother said she was attempting to find work from home doing telemarketing. Notably, the witness acknowledged that the Department was not going to give Appellants the opportunity to care for the child, even if Mother followed through on counseling, as the Department’s goal had always been the adoption of V.B.
The lead family counselor admitted that the Department had no contact with Appellants from 2009 until V.B.’s birth in 2012, and she had no idea what Appellants learned about parenting during that time. She believed Appellants’ prior parenting record was the problem that would prevent them caring for the child. She reiterated that V.B. was removed based upon Appellants’ past history. She testified that Appellants provided nothing to show that they had changed.
V.B.’s caregiver testified that she and her husband adopted VB.’s six other siblings and, at the time of the hearing, V.B. was in their custody. She testified that when the other six children came into their care, one child, J.B., was believed to have behavioral problems because he would not listen, but they discovered that he was 95% deaf in his right ear because tubes placed in his ears had been neglected. Subsequently, J.B. had another surgery and began receiving speech therapy. The caregiver acknowledged that she and her husband want to adopt V.B.
The Father testified that he had held the same job for more than two years and lived in an appropriate setting. He acknowledged that he had to ride a bicycle to work and had previously fallen behind in making rent payments. He earned approximately $1,200 per month as a cook, working just under 40 hours a week. He testified that Appellants tried to visit V.B., but missed some visits due to transportation problems. He acknowledged his prior failings as a parent to his other six children, and that he and the Mother had failed in their ease plans. He further testified that they had lost a child due to Sudden Infant Death Syndrome, which had caused him to suffer from depression. The medical examiner did not find Appel *1200 lants responsible for the death of their child. The Father stated that the Department removed their last child, D.B., in 2009, and no services were offered at that time or in the present case. The Father further acknowledged that he and the Mother had moved far too often and that stable housing was necessary to help properly raise a child, but believed they had found a home within their budget. He also testified that he was determined to overcome his prior mistakes, he had stable employment, and he had learned from his mistakes.
The Mother testified that since her last child was removed in 2009, she had learned what is considered to be neglect. She testified that she was attempting to get employment with a telemarketing company doing customer service. While not working, she spent her time cleaning their home, looking for online jobs, and looking at obtaining her GED from home. She knew when she got pregnant with D.B. in 2009 that not enough time had passed from the terminations of their other five children in 2008 for them to actually learn and understand the mistakes they made with the other children.
The Guardian Ad Litem testified that she was concerned that Appellants were overextended on their rent and other items, but she described their current home as appropriate.
The trial court granted the expedited petition for involuntary termination of parental rights. The court determined that the Department established by clear and convincing evidence that termination of Appellants’ parental rights was appropriate pursuant to sections 39.806(l)(i) and 39.806(l)(c), Florida Statutes. Regarding section 39.806(l)(i), the court found that “[t]he underlying cause of the prior terminations of these parents’ right to their other children can be concisely described as a fundamental lack of capacity to parent.” With respect to Appellants’ current situation, the court also found that, even after the removal of the six prior children, Appellants had been unable “to achieve even a modicum of residential stability and continue to manifest a basic lack of capacity to do so.” As a result, the court determined that any child in their care would be at great risk of significant harm.
Concerning section 39.806(l)(c), the court determined, relying almost exclusively on the evidence from the past terminations, that Appellants posed a risk to V.B. irrespective of the provision of services. Regarding Appellants’ current situation, the court again focused on Appellants’ housing instability, noting that it was a prominent feature in their past terminations. The court concluded that it was inconceivable that Appellants could handle the added responsibilities of raising a child when they were unable to maintain stable housing when it was just the two of them.

Standard of Review

We acknowledge our standard of review here is whether there is “competent, substantial evidence which could reasonably be found to be clear and convincing....” A.H. v. Fla. Dep’t of Children and Family Services, 85 So.3d 1213, 1215 (Fla. 1st DCA 2012); see also N.L. v. Dep’t of Children and Family Services, 843 So.2d 996 (Fla. 1st DCA 2003) (“Our standard of review is highly deferential. A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in eviden-tiary support.).

Section B9.806(l)(i), Florida Statutes

Section 39.806(l)(i) authorizes termination of parental rights when parental rights to the child’s sibling have been terminated involuntarily. When termination *1201 of parental rights is sought because of a prior involuntary termination of rights to a sibling, the Department must prove by clear and convincing evidence that there is substantial risk of significant harm to the current child, and that termination of parental rights is the least restrictive means of protecting the child from harm. Fla. Dep’t of Children and Families v. F.L., 880 So.2d 602 (Fla.2004).
In this case, it is undisputed that Appellants’ parental rights to V.B.’s six siblings have been involuntarily terminated. The prior terminations were based upon neglect, including medical neglect. Appellants, however, argue that the Department failed to establish by clear and convincing evidence that they pose a substantial risk of significant harm to V.B. and that termination is the least restrictive means of protecting V.B. from harm. We agree.
In F.L., the Florida Supreme Court discussed evidence that the trial court could consider when looking at the totality of the circumstances to determine that a current child is at substantial risk of significant harm and termination is the least restrictive means of protecting the child. 880 So.2d at 610. In particular, the court made clear that the circumstances leading to the prior termination were highly relevant, especially “if the parent’s conduct that led to the involuntary termination involved egregious abuse or neglect of another child, this will tend to indicate a greater risk of harm to the current child.” Id. The court, however, noted that the amount of time that had passed since the prior involuntary termination was also relevant. Id. Finally, the court explained that a trial court could consider changes in circumstances since the prior involuntary termination, as a positive life change could overcome a negative history even if past conduct had some predictive value on future conduct. Id. The court, however, explicitly stated that “a parent is not required to show evidence of changed circumstances to avoid a termination of rights under section 39.806(l)(i).” Id.
As noted above, Appellants’ parental rights were terminated for their previous child, D.B., on June 12, 2009. Almost three years later, on March 31, 2012, V.B. was removed from Appellants’ custody. This time frame is relevant under the holding of F.L. We find that, as a matter of law, such a time frame contains very little probative value as to whether the prior termination indicates a risk of neglect. In other words, the prior termination was not so close in time to this proceeding as to provide competent, substantial evidence that Appellants pose a risk of significant harm to V.B. The trial court’s order essentially revisits the findings of the prior terminations and finds that Appellants have not demonstrated a capacity to appropriately care for V.B. But again, under F.L., it is not the parents’ burden to show they are capable of such care; it is the Department’s burden to show by clear and convincing evidence that Appellants cannot care for V.B. F.L., 880 So.2d at 610.
The evidence at trial reflects that the Department had no real contact or interaction with Appellants to determine what changes Appellants had made in their lives after the prior termination of parental rights. There was evidence that Appellants’ living situation had changed a number of times after the prior termination, but there was no testimony that any of Appellants’ residences were unclean, unsafe, or unsuitable. There was also no evidence that Appellants engaged in substance abuse, or any other conduct that would indicate a likelihood of presenting a “substantial risk” that they will cause “significant harm” to V.B.
*1202 Additionally, the Department did not offer a reunification case plan, pointing to Appellants’ failure to complete three different case plans in the prior terminations. The Department argues that the prior terminations were pursuant to section 39.806(l)(i), and that section 39.806(2) does not require reasonable efforts be taken to preserve and reunify families, and section 39.806(3) does not require a case plan with the goal of reunification. Although the Department is correct that section 39.806(3) does not require the Department to formulate a case plan with the goal of reunification and it can proceed with a case plan having a goal of termination of parental rights, it also makes clear that this procedure may continue “until further orders of the court are issued.” So while the Department is not obligated to provide a case plan under the statute when there has been a prior involuntary termination, and the Department has chosen to proceed with termination, this does not eliminate its burden to prove that termination is the least restrictive means, as this test is based upon fundamental parental rights. As such, where the Department fails to prove that there is significant risk of harm to the current child, or that there are no measures short of termination that could be used to protect the child from harm, then termination will not pass constitutional muster. See F.L., 880 So.2d at 608.
We acknowledge that the trial court properly considered the prior terminations as relevant evidence as to whether Appellants posed a risk of harm to V.B., but that evidence was not sufficient to demonstrate a likelihood of prospective neglect. Under the facts of this case, we find that the Department failed to sufficiently connect Appellants’ past with their present situation to show that V.B. was at significant risk. Although we appreciate the trial court’s dilemma where Appellants’ six children were previously removed from their custody, obviously satisfying the statutory criteria of section 39.806(1)®, Florida Statutes, nevertheless, the Department did not meet its burden here to demonstrate that termination was the least restrictive means of protecting the child.

Section 39.806(l)(c), Florida Statutes

The Department and the trial court also relied on section 39.806(l)(c), Florida Statutes, to terminate Appellants’ parental rights. Section 39.806(l)(c), authorizes termination of parental rights when the parents have engaged in conduct toward the child or other children that demonstrates that their continued parental involvement with the child would threaten the “life, safety, well-being or physical, mental or emotional health of the child irrespective of the provision of services.” To establish termination under this ground requires proof that: 1) the child’s life, safety, or health would be threatened by continued interaction with the parents regardless of the provision of services, 2) there is no reasonable basis to believe the parents will improve; and 3) termination is the least restrictive means of protecting the child from harm. See L.J. v. Fla. Dep’t of Children & Families, 33 So.3d 99, 101 (Fla. 1st DCA 2010); M.H. v. Dep’t of Children & Families, 866 So.2d 220, 222-23 (Fla. 1st DCA 2004).
The Department sought termination of Appellants’ rights under this section based on conduct toward “other children,” as V.B. was immediately removed from the hospital. Although there was evidence that Appellants’ past conduct toward their other six children was clearly detrimental to those children, the passage of almost three years since the prior terminations, coupled with the undisputed evidence that Appellants had an appropriate and safe *1203 home, was insufficient to sustain the termination, as the Department failed to present any evidence that the current child would be harmed by interaction with Appellants.
Regarding prospective neglect or abuse cases, this court has held that the issue is
whether future behavior, which will adversely affect the child, can be clearly and certainly predicted. Palmer v. Dep’t of Health & Rehabilitative Servs., 547 So.2d 981, 984 (Fla. 5th DCA 1989). If the parent is so afflicted that no reasonable basis exists for improvement, then the court may find prospective neglect or abuse.
L.B. v. Dep’t of Children & Families, 835 So.2d 1189, 1195 (Fla. 1st DCA 2002). There, this court concluded that termination pursuant to section 39.806(l)(c) was improper because, while Mother suffered from depression and anger management issues, her therapist did not testify that no reasonable basis existed for improvement. Id.
Here, the trial court focused on Appellants’ involvement with the Department from 2004 to 2009, including their failure to complete three different case plans, even though Appellants were offered numerous services, including parenting classes, housing assistance, and counseling. The court concluded that despite the numerous services and assistance provided to Appellants, V.B.’s siblings suffered from neglect, including injury due to failure to supervise, severe diaper rashes, uncleanliness to the point of noxious body order, dental issues, developmental delay, hearing deficits due to failure to properly treat ears after placement of tubes, and chronic missed medical appointments. The court noted that throughout this same time period, another prominent feature of Appellants’ lives was their inability to maintain stable housing. The court found it inconceivable that Appellants could maintain stable housing with the addition of a child when they could not maintain stable housing for just themselves.
We find, however, that the combination of the circumstances surrounding the past terminations, and the only focus on Appellants’ current situation being inst-able housing, is insufficient as a matter of law to show a likelihood of future risk of harm to V.B.
Other than Appellants’ poor economic status and past difficulties in maintaining stable housing, there is insufficient evidence to show termination is necessary and the only remedy to protect the child. M.S. v. Dep’t of Children and Families, 920 So.2d 847 (Fla. 4th DCA 2006). In fact, the evidence demonstrated that Appellants did have a safe and appropriate home,, suitable for raising a child. While it was shown that Appellants had resided in the home for only four months, the evidence demonstrated that the landlord was committed to working with Appellants if rent payments were potentially delayed. Both Father and Mother have also acknowledged their prior neglect and omissions. Appellants have visited V.B., they have acted appropriately with him, and they have demonstrated their desire to raise their child.
Furthermore, case law makes clear that “parental rights cannot be terminated simply because the parent is poor, uneducated, and without sufficient financial resources to care for her children in the manner the Department deems advisable-” T.C.B. v. Dep’t of Children & Families, 816 So.2d 194, 197-98 (Fla. 1st DCA 2002).

Best Interests of the Child

Finally, we acknowledge that we have not addressed whether termination is in the best interest of the child, and we de- *1204 dine to do so. We find that where the Department has not provided competent, substantial evidence to prove that Appellants pose a substantial risk of significant harm to V.B., and thus failed to show that termination is the least restrictive means of protection, we need not decide whether termination would be in the child’s best interests. See J.J. v. Dep’t of Children & Families, 994 So.2d 496, 503 (Fla. 4th DCA 2008) (holding that it need not discuss the trial court’s findings concerning the manifest best interests of the children because it was reversing termination due to the Department’s failure to prove that the mother posed a substantial risk of significant harm and that termination was the least restrictive means).
Thus, we REVERSE and REMAND for further proceedings consistent with this opinion, as authorized pursuant to section 39.811(1), Florida Statutes (2012).
DAVIS and PADOVANO, JJ., Concur.

. The trial court’s order reflects that the Department withdrew the ground pled in the petition under section 39.806(1)(Z).