WARNER, J.,
dissenting.
I dissent. I would adopt the reasoning of O.R. v. Department of Children and Family Services, 979 So.2d 1105, 1106-1107 (Fla. 3d DCA 2008), which interpreted identical language in the dependency statute regarding the trial court’s authority to enter a consent. The Third District held that the similar dependency statute, section 39.506(3), Florida Statutes (2008), does not authorize the trial court to enter a consent when the parents appear for the first day of trial but are not present on a continuation of the trial.
Section 39.801(3)(d), Florida Statutes (2012), provides:
If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.
Identical language is contained in section 39.506(3), construed by the Third District in O.R. In that case, the parents appeared on the first two days of the adjudicatory hearing and failed to appear on the third day scheduled three months later, the same circumstances as in this case. The trial court entered a consent, and the appellate court reversed, concluding that the statute did not allow for a consent to be entered when the trial was proceeding:
Florida’s long standing public policy favors adjudication of disputes on the merits, ... and we decline the Department’s invitation to extend the statute beyond its plain words. The statute says nothing about imposing a consent where a parent appears for the initial trial day and then fails to appear on a subsequent day. As this court stated in Nickerson [v. Department of Children and Families, 718 So.2d 373, 374 (Fla. 3d DCA 1998) ], “In the absence of any statute or rule allowing for the entry of defaults in these types of proceedings, we conclude that the trial court had no authority to enter a default judgment. ...” Id.
* * *
While the defense attorneys in this case moved for a continuance, they were unable to articulate any good cause for delaying the trial. The motion for continuance was properly denied. The Department should have proceeded with the presentation of its case, rather than seeking a default.
Id. at 1107-08 (citations omitted).
I would apply this reasoning to section 39.801(3)(d). It appears to be quite normal in termination proceedings for adjudicatory hearings to be extended over multiple days spread over weeks, if not months. The Department should not be relieved of its burden to prove the essential facts of such an important proceeding where the parents miss one day of an extended hearing.
*981 J.M. v. Department of Children and Families, 9 So.3d 34, 36 (Fla. 4th DCA 2009), is distinguishable, because the issue was not raised in that case. The mother attacked the consent entered after several days of trial, because she was not given proper notice. We concluded in that case that the trial court erred, but that it was harmless. In addition, I would recede from A.J. v. Department of Children and Families, 845 So.2d 973, 975-76 (Fla. 4th DCA 2003), which rejected a similar argument as presented in O.R.
Termination cases are frequently referred to as the civil death penalty for families. If a criminal defendant were unavailable for trial, the state could not simply default the defendant. It must prove its case to a jury. Similarly, because of the final nature of termination of parental rights cases, these cases are simply too important to children and families to let them be decided by default.
I also cannot conclude that the Department otherwise proved its case against the mother. The parents and children have been in and out of dependency proceedings for almost ten years, mostly due to both parents’ continued drug use. The mother used Xanax. It had been prescribed to her when she was a teen, and as she testified during the TPR trial, it made her feel “normal.” She relapsed into illegal use of the drug when trying to cope with injuries her daughter suffered when she was accidentally shot in the hand by her brother. The drug use has caused the children to be removed at least twice each from the mother’s care prior to their present removal. In each of the other removals, the mother successfully completed her tasks and regained custody of the children.
Although at various times over the years the Department had received recommendations from providers of services indicating that the mother needed a psychiatric evaluation and treatment, those services were never offered to her. When the guardian ad litem was appointed in the termination proceedings, she moved for a continuance so that the mother could be evaluated for underlying psychological/psychiatric issues. The court continued the proceedings to allow the mother to have the evaluation and any recommended treatment. The examination was conducted, and the psychologist made recommendations for treatment for an underlying depressive disorder. Despite these recom-niendations, the trial court disregarded them, believing that the mother had not timely obtained the evaluation and thus was essentially doing “too little too late.” This ignored the testimony of the child advocate that the mother was not responsible for the delay in getting the evaluation, as DCF was changing service providers for such evaluations at the time.
Substance abuse alone is an insufficient ground to establish termination of parental rights. See M.H. v. Dep’t of Children & Families, 866 So.2d 220, 222 (Fla. 1st DCA 2004); B.C. v. Dep’t of Children & Families, 846 So.2d 1273, 1275 (Fla. 4th DCA 2003) (in dependency proceeding, although there was evidence of parent’s drug and alcohol abuse, there was no evidence that parent had failed to meet child’s needs while child was in his care). The state must connect the drug abuse to specific harm to the child.
Even if the state proves a ground for termination, before a parent’s right to her child can .be terminated, the state must show that termination is the least restrictive means of protecting the child from serious harm. Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla.1991). This requires that DCF show that it has made a good faith effort to rehabilitate the parent through a case plan. Id.
*982 As explained in M.H., this requires that the state prove three elements:
First, the trial court must find the children’s life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services. See In re C.W.W., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001). “In essence, the trial court must find that any provision of services would be futile or that the child[ren] would be threatened with harm despite any services provided to the parent.” Id.; see also N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 1002 (Fla. 1st DCA 2003).
Second, if the court finds the children would be threatened with harm, despite the provision of services, DCF must then prove there is no reasonable basis to believe the parent will improve. See F.L. v. Dep’t of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003); see also L.B. v. Dep’t of Children & Families, 835 So.2d 1189, 1195 (Fla. 1st DCA 2002) (noting prospective neglect or abuse may be found if a parent is so afflicted that no reasonable basis exists for improvement). Where the record demonstrates a reasonable basis exists to find the parent’s problems could be improved, parental rights cannot be terminated. See L.B., 835 So.2d at 1195.
Finally, DCF must show termination is the least restrictive means of protecting the children from serious harm. See id. at 1195. The least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond. See id. at 1196 (holding termination of mother’s parental rights not least restrictive means where father working on case plan, and no evidence mother’s visits were harmful); Gaines v. Dep’t of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998) (holding termination of parental rights not least restrictive means, in part, where court did not consider relative placement before terminating parental rights).
866 So.2d at 222-23 (emphasis supplied).
Because the Department knew of the recommendations for psychological evaluation and never provided the mother with the recommended psychological or psychiatric services, I think the court could not find that termination was the least restrictive means until the Department provided the mother with the opportunity through a new case plan to address these issues which underlay her behavior and substance abuse. Although the mother had been given many opportunities to address her substance abuse, these can’t be sufficient if they do not address. the issues causing the substance abuse, known by the Department but ignored.
The trial court’s finding that termination was in the manifest best interest of the children is also not only unsupported by competent substantial evidence, it is against the manifest weight of the evidence. The children are adamant that they want to be with their mother, and the trial court’s determination that the children could not express a preference because they were not “age appropriate to verbalize their preferences” is completely unfounded. The children are ten and seven, and C.S. has been very vocal that he wants to be with his mother. All of the time that the children have been in and out of the custody of the parents, they have been with them grandparents, not foster parents. Thus, they have remained with family, and there is no evidence that they have suffered, other than being apart from their mother. They are apparently not in need, psychologically or physically. While *983 the maternal grandparents have said they would adopt the children, the guardian ad litem also testified that the grandmother preferred that her daughter shape up and take the children. Despite her drug issues, the mother is very appropriate in her interactions with her children, and the children are very bonded to her.
The court, however, never heard from the grandmother or the children. Instead, it relied on a TPR advocate who appears to be an employee of DCF or of the Attorney General,[1] who had never spoken to the children or their therapist, and the child advocate who admitted that the mother had not been given the opportunity to address her underlying psychiatric conditions.
The children in this case were stable in their placement with the maternal grandmother. They wanted to be with their mother. Over these many years in which the Department was involved with the mother, it never provided her with the evaluation and treatment that so many had recommended. The guardian ad litem literally pleaded with the court not to terminate the mother’s rights until the mother had the opportunity to complete psychiatric treatment and has appealed the termination of parental rights on behalf of the children.
It appears to me that termination was not in the best interests of the children. I would hold that the court erred as a matter of law in entering a consent to the termination for both parents. Further, the trial court abused its discretion in terminating the mother’s rights, both in determining that termination was the least restrictive means of protecting the children and that it was in their manifest best interest. I would reverse and remand to provide the mother an opportunity to complete tasks and treatment recommended by her examining psychiatrist.

. I am not sure why she was allowed to testify, as she doesn’t appear to be an expert but, rather, appears to be an employee of the Department. She never talked to the children or their therapist. She only talked to the parents a few times at hearings and to the grandmother twice. Mainly, she reviewed the file. Her testimony is simply not competent substantial evidence to support termination, in my view.